**STATE of North Dakota, Plaintiff and Respondent,**

v.

**Fay HEASLEY, Defendant and Appellant.**

**Cr. No. 389.**

Supreme Court of North Dakota.

Sept. 24, 1970.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Thomas Burgum, State's Atty., for Stutsman County, Jamestown, for respondent.

KNUDSON, Judge.

Mr. Heasley was found guilty by a jury in the County Court with Increased Jurisdiction for Stutsman County, North Dakota, of the offense of contempt of court for willful disobedience of the order of the District Court of Stutsman County, North Dakota, contained in that certain judgment and decree quieting title to real estate in the matter of Carl A. Bertel, et al., plaintiff, versus Stutsman County, et al., defendants, and Fay Heasley, intervenor, dated March 11, 1966, in the following language:

It is the further judgment of this court that * * * the intervenor, Fay Heasley, * * * shall be forever disbarred and enjoined from further asserting any right, claim, interest, estate, lien or encumbrance upon or to said premises.

It is the further judgment of this court that the title to said premises be quieted in favor of the plaintiffs as to any and all claims of said defendants and said intervenor, Fay Heasley, and

that each and every one of them, their executors, administrators and assigns be forever debarred and enjoined from asserting any estate or interest in or lien or encumbrance upon said premises or any part thereof.

Mr. Heasley appealed from the judgment and sentence and also from the judgment and sentence of the forfeiture of $300 of the bail bond for failure to appear on the appointed date for hearing.

Mr. Heasley specified as error:

(1) That he was denied the right of counsel and that the court failed to secure counsel for him, after he informed the court that he was without funds to procure counsel to handle his defense;

(2) That he was sentenced on the bond forfeiture for failing to appear, when he did, in fact, appear on the date set by the court for such appearance, which date happened to be Sunday, and which date, as stated, was verified by the Jamestown paper, which published a similar date to the one on which the defendant appeared.

Mr. Heasley had intervened in the action to quiet title brought by Mr. Bertel and wife, contending that he was either the owner or the renter of the land involved, although the record is not clear as to the nature of his interest in the land, but, in any event, costs had been assessed against Mr. Heasley in the action to quiet title.

Mr. Heasley paid these costs to the clerk of court, and he asserted that upon the payment of these costs he became the owner of this land. From the testimony it appears that Mr. Heasley had been the owner of this land several years ago, and that in the immediate past that Mr. Heasley had been renting this land from Mr. Bertel, through the year 1967. Mr. Mountain and Mr. Wetherly purchased this land in the fall of 1967 from Mr. Bertel and wife.

In the spring of 1968, and particularly on April 30, Mr. Mountain discovered that someone was burning weeds and grass on

this land and that there was a combine sitting on the cultivated area of this land. Upon learning that Mr. Heasley was the owner of the property, he asked him to move the machinery from the premises. Mr. Heasley declined to do so, whereupon Mr. Mountain and Mr. Wetherly caused the machinery to be placed on the section line. Mr. Heasley moved the machinery back onto the land, and Mr. Mountain and Mr. Wetherly again removed this machinery to the section line. In a conversation with Mr. Mountain and Mr. Wetherly, Mr. Heasley maintained that the land was his, that he had a check to prove it (the check to the clerk of court for the costs in the quiet title action), and Mr. Heasley objected to the moving of his machinery off the premises.

Mr. Mountain swore out a criminal complaint on May 1, 1968, charging Fay Heasley with contempt of court.

The criminal complaint alleged that the crime of willful disobedience of a court order was committed by the defendant by moving machinery onto the Southwest Quarter of Section 12, Township 138, Range 66, Stutsman County, North Dakota, burning weeds and grasses on the premises, and by advising complainant that he intended to farm said premises during the year 1968, all in violation of § 12–17–24, North Dakota Century Code.

The offense of contempt of court is a misdemeanor under the statute, § 12–17–24, N.D.C.C., as set forth therein:

> Every person guilty of contempt of court of the following kinds is guilty of a misdemeanor:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 4.　Willful disobedience of any process or order lawfully issued by any court;

The defendant was sentenced to be punished by a fine of $500 and costs assessed in the sum of $1,000, and upon failure to pay such fine and costs within thirty days, to serve a sentence at the State Farm for a period of six months. The court also directed the forfeiture of $300 of the bail bond for the defendant's nonappearance on the 7th of February, the date set for sentencing, when the defendant failed to appear.

We will consider first the specification of error that the court erred in not appointing counsel for the defendant as an indigent after it appeared that the defendant had informed the court that he was unable to obtain counsel of his own because he was without funds to hire and pay for the services of an attorney.

The criminal complaint was issued on May 1, 1968, and the defendant was arrested shortly thereafter. The court set a jury trial for November 21, 1968, at 2:00 p. m. John Paulson, an attorney at Valley City, had filed an affidavit of prejudice against the county judge of Stutsman County on May 7, 1968, and the Honorable Kirk Smith, of the Grand Forks County Court with Increased Jurisdiction, agreed to preside over the jury trial upon the request by the Honorable T. E. George, Judge of the County Court with Increased Jurisdiction of Stutsman County. Thereafter, and before the date set for trial, November 21, 1968, Mr. Paulson wrote to Judge Smith that he was no longer representing the defendant because the defendant was unable to pay him for past or future services, and that Mr. Heasley would represent himself. The case was called for trial on November 21, 1968, with the jury assembled. Mr. Heasley then informed the court that he had no attorney to represent him; also, that he, Mr. Heasley, was barred from appearing in any court by the Internal Revenue Service and the federal government. The trial court replied that the injunction referred to by Mr. Heasley did not prevent the State from proceeding against the defendant in the prosecution of the criminal complaint, or the defendant from defending himself in this court. The defendant said he was ready to proceed, and then said probably he should call his attorney to see if he could come down, whereupon the

court granted a recess of fifteen minutes for him to call the attorney. The court recessed to permit Mr. Heasley to call Mr. Paulson, who advised him that he did not wish to represent or appear for Mr. Heasley in this case, claiming that he had not been paid for services rendered for past representation. The judge, the state's attorney and Mr. Heasley engaged in a colloquy concerning the action to quiet title and the cost judgment therein entered against Mr. Heasley, and another proceeding relating to another judgment against Mr. Heasley upon which execution had been issued and levied upon a flax crop of the defendant and part of the flax sold to satisfy the other judgment, all of which indicated to the defendant that he had satisfied all the claims against him as it related to this tract of land, and that he was now the owner of the said tract of land.

At the conclusion of the colloquy the defendant indicated that he desired to proceed to trial with counsel, "if I can." The court was then adjourned until ten o'clock the next morning, to November 22, 1968.

Upon the court reconvening the next morning, the defendant informed the court that he had phoned an attorney by the name of "George" at Oakes but that he did not know his last name and he could not recall it; that this attorney was not then in the courtroom. He had also phoned a couple of other attorneys, who said they would have to have a couple days to look into it. The court then was recessed, and the court, the state's attorney and Mr. Heasley retired to chambers, where a telephone call was placed to Mr. George Margulies, an attorney at Oakes, North Dakota, who informed the court that he did not represent Mr. Heasley. There then followed a colloquy among the court, the state's attorney and Mr. Heasley to continue the case over to some future date when a jury would be available, and to give Mr. Heasley time within which to obtain counsel. The court set January 7, 1969, at 10:00 a. m., as the date and time of the trial, with Mr. Heasley to advise the court

not later than January 2 as to whom he had obtained for counsel and that he would be ready to proceed to trial. "[I]f they are not ready to proceed to trial or you do not have counsel, I will at that time appoint an attorney for you," to which Mr. Heasley agreed. A further colloquy ensued, resulting in the court setting the 20th of December as the date the defendant should notify the court whether or not he had obtained counsel, and that that should give the defendant ample time to obtain counsel, to which the defendant agreed. The court then continued the case until Tuesday, January 7, 1969, at 10:00 a. m.

The court convened on Tuesday, January 7, 1969, at 10:00 a. m., with the court, the state's attorney and Mr. Heasley retiring to chambers, the defendant having announced that he could not bring his own attorney. In chambers the judge announced that he had been informed by the clerk of the Stutsman County Court on December 20 that Mr. Heasley did not have an attorney representing him at that time; that he undertook to appoint Mr. Lenaberg, an attorney at Valley City, but that Mr. Lenaberg advised the court that he would not serve as court-appointed counsel. The court then announced:

This is a misdemeanor case in which the court appointment of counsel is not mandatory; certainly, a defendant has a right to be represented by counsel if he so chooses, but he must first attempt to obtain counsel and if he, for one reason or another—other than lack of funds—is unable to obtain counsel, he is not entitled to have a court appointed counsel. It is only for the sake of lack of funds and that only in *misdemeanors* [we assume the court meant to say "felonies" instead of "misdemeanors"]. Now, the reason that this Court offered to appoint counsel is to assure that he would be able to go to trial today. The presence of counsel, in the Court's mind, is not an absolute requisite of going to trial, that if a defendant who had made no showing here that he does not have funds to hire

counsel for this purpose, misdemeanor defense, who is not charged with a felony; and, so, it is the intention of the Court to proceed to trial without counsel with the defendant; * * *.

Whereupon the defendant requested the court to appoint counsel for him; which request the court refused, saying:

And, it has never been enunciated in any court in this country that a person has a —through the court appointed—to court appointed counsel in a misdemeanor case, and if you wish to raise an objection on that ground you may do so and preserve it for a later record if you wish.

Mr. Heasley had thought, apparently, that the court would appoint an attorney for him, as he stated:

Being that my time expired the 20th, I thought the Court would have an attorney appointed, and I expected to meet with him; * * *.

The court then resumed without Mr. Heasley being represented by counsel, a jury was duly impaneled and sworn, and the case proceeded to trial.

It is needless to review the proceedings of the trial of this action in detail, except to state that, even with the conscientious and considerate help of the trial court, Mr. Heasley displayed a total lack of knowledge of the rules of evidence or of the procedure of a trial. His attempt to act as his own counsel amounted to no counsel at all, and it may be said, was worse than no counsel at all.

The record reveals that Mr. Heasley proceeded to trial without counsel without knowingly or intelligently waiving counsel. Under the circumstances present here he was compelled to proceed to trial without counsel, as the court had announced it would not appoint counsel for him. The record discloses a person thoroughly confused as to the issues involved, both of fact and of law, and an inadequate defense of his cause by himself as his own attorney.

Section 13 of the North Dakota Constitution, in defining rights of the accused in criminal prosecutions, states that the party accused shall have the right "to appear and defend in person and with counsel."

■ Sections 27–08–31, 29–01–27, and 29–13–03, North Dakota Century Code, are legislative expressions of the guarantee of one accused of crime to appear in person and with counsel. These legislative declarations set a minimum standard which should be followed in order to afford the defendant his right to counsel as guaranteed. It is important that they be made effective so that every accused may procure a fair trial. State v. Whiteman, 67 N.W. 2d 599 (N.D.1954).

In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; * * * and to appear and defend in person and with counsel. * * *

North Dakota Constitution § 13.

In all criminal cases in the county court having increased jurisdiction, when it is satisfactorily shown to the court that the defendant has no means and is unable to employ counsel, the court shall assign counsel for the defense * * *.

N.D.C.C. § 27–08–31.

In all criminal actions when it is satisfactorily shown to the court that the defendant has no means and is unable to employ counsel, the court shall appoint and assign counsel for his defense * * *.

N.D.C.C. § 29–01–27.

If a defendant appears for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned and must be asked if he desires the aid of counsel. If he desires, and is unable to employ, counsel, the court must assign counsel to defend him. Counsel so assigned shall serve without cost to the defendant * * *.

N.D.C.C. § 29-13-03.

Section 27-08-31, relating to appointment of counsel for indigent defendants in county courts of increased jurisdiction, and § 29-01-27, relating to appointment of counsel for indigent defendants in the district courts, have been superseded by Session Laws 1967, chapter 259, wherein § 29-07-01.1 was created and enacted to read as follows:

29-07-01.1. *Appointment of counsel for indigents—Payment of expenses.*— The magistrate before whom a defendant charged with the violation of state criminal law is brought may appoint counsel from a list prepared under the direction of the senior district judge in his district and in the manner prescribed by him. The determination of the degree of need of the defendant shall be deferred until his first appearance before the trial judge, and the court may require the defendant to answer all inquiries under oath concerning his need for appointment of counsel. *Thereafter, the court concerned shall determine, with respect to each proceeding, whether the defendant is a needy person. The appropriate judge may appoint counsel for a needy person at any time or for any proceeding arising out of a criminal case if reasonable.* [Emphasis added.]

Lawyers appointed to represent needy persons shall be compensated at a reasonable rate to be determined by the court. Expenses necessary for the adequate defense of a needy person, when approved by the judge, shall be paid by the county wherein the alleged offense took place. A defendant with appointed counsel shall pay to the county such sums as the court shall direct. The state's attorney shall seek recovery of any such sums any time he determines the person for whom counsel was appointed may have funds to repay the county within six years of the date such amount was paid on his behalf.

Session Laws 1967, ch. 259, § 2.

The legislature adopted chapter 259 of the Session Laws of 1967, among other things, to authorize the appointment of counsel for indigent defendants at public expense at a preliminary hearing, but that the determination of the need of the defendant for the appointment of counsel at public expense will be deferred until his first appearance before the trial judge, and the court may then require the defendant to answer all inquiries under oath concerning his need for appointment of counsel at public expense. The statute also provides for court-appointed counsel for needy defendants in "the court concerned," and before "the appropriate judge";

Thereafter, the court concerned shall determine, with respect to each proceeding, whether the defendant is a needy person. The appropriate judge may appoint counsel for a needy person at any time or for any proceeding arising out of a criminal case if reasonable.

Session Laws 1967, ch. 259, § 2.

By these provisions the court is directed to inquire into the need of the defendant for appointment of counsel at public expense, and is authorized to appoint counsel for a needy person.

The provision for the appointment of counsel in criminal cases in county courts with increased jurisdiction in misdemeanor cases, the limit of the jurisdiction of the county courts with increased jurisdiction in criminal cases, has been on the statute books for a great number of years. § 27-08-31, N.D.C.C. We are of the opinion that the legislature by enacting chapter 259 of the 1967 Session Laws, and therein repealing §§ 27-08-31 and 29-01-27, did not intend to eliminate the proviso for the appointment of counsel for indigent defendants in district courts or in county courts with increased jurisdiction, but that such proviso has been continued in chapter 259, and that the provisions of. that statute for the appointment of counsel is applicable to county courts with increased jurisdic-

tion, as well as to the district courts. The 1967 enactment is also made applicable to county courts with increased jurisdiction by § 27–08–24, which provides that the provisions of law and rules of practice and procedure applicable to district courts in criminal actions shall apply to county courts with increased jurisdiction.

County courts with increased jurisdiction have concurrent jurisdiction with district courts in all criminal actions below the grade of felony under the constitution and statutes of this state. Section 111 of the North Dakota Constitution provides that the jurisdiction of the county courts with increased jurisdiction shall have concurrent jurisdiction with the district courts in all criminal actions below the grade of felony. Section 27–08–20 carries out the constitutional edict and provides that a county court which has been given increased jurisdiction shall have concurrent jurisdiction with the district court in all criminal actions below the grade of felony.

County judges of county courts with increased jurisdiction have the same power and authority which the judge of a district court possesses under the provisions of § 27–08–23, which provides that a county judge of a county court having increased jurisdiction in any action or proceeding which lawfully can be instituted before him shall possess the same power and authority which a judge of the district court possesses in a similar action or proceeding instituted before him in like manner.

■ In view of these constitutional and statutory provisions relating to the jurisdiction of county courts with increased jurisdiction, and the power and authority of a county judge of a county court with increased jurisdiction; and the statutory provisions relating to the appointment of counsel for indigent defendants in county courts with increased jurisdiction charged with an offense constituting a misdemeanor, a county judge has the power and authority to appoint counsel for an indigent defendant charged with an offense constituting a misdemeanor to represent him at the trial.

■ The purport and implication of the colloquy among the court, the state's attorney and Mr. Heasley is that he proceeded to trial without counsel under compulsion, because his request to the court to appoint an attorney to represent him had been refused after he had informed the court that he could not hire an attorney and that he did not have the finances to hire a lawyer. From this it appears that the defendant did not waive his right to counsel, and proceeded to trial only because the court informed him that he was not entitled to a court-appointed counsel in a misdemeanor case, and if a waiver of counsel may be implied by thus going to trial it cannot be said that the waiver of counsel was freely and understandingly made.

■ The court stated that if the defendant has made no showing that he does not have funds to hire counsel for the trial of a misdemeanor offense, and has not been charged with a felony, that the court intends to proceed to trial without appointed counsel for the defendant. We believe the court erred in refusing to appoint counsel. Under the provisions of chapter 259 of the Session Laws of 1967, § 29–07–01.1, pocket supplement to the North Dakota Century Code, the judge of the county court with increased jurisdiction, or the judge of the district court, as the case may be, must go forward to determine whether or not the defendant is indigent and a needy person, and the judge thereof, the appropriate judge, upon making a determination that the defendant is a needy person, must appoint counsel for the defendant at public expense in any proceeding arising out of a criminal case, whether the offense charged is a misdemeanor or a felony.

We cannot say here that the defendant has intelligently and competently waived his right to assistance of counsel.

■ To be effective, the waiver must be made "voluntarily and intelligently by a

competent mind." State v. Haas, 69 S.D. 204, 8 N.W.2d 569, 570.

■ Before an accused is asked whether or not he desires the aid of counsel, he should first be fully informed of his rights in this regard. Otherwise, the inquiry about counsel becomes an idle ceremony devoid of any substance or purpose. Our statutes contemplate that when a defendant appears for trial without counsel the trial judge should (1) inform the accused of his right to counsel and of an indigent defendant's right to a court-appointed counsel at public expense; (2) ask the accused if he desires the aid of counsel; (3) if the accused desires counsel, inquire into his financial condition; and (4) if the accused is financially unable to employ counsel of his own choice, appoint competent counsel to represent him at the expense of the county.

■ Where, as here, the defendant is unable to obtain counsel, appears in court without counsel, and requests the court to appoint counsel for him, under the Constitution and statutes the court should proceed to determine whether the defendant is a needy person. The defendant is not required to initiate the request for the appointment of counsel at public expense, and file a statement of indigency that he has no means and is unable to employ counsel. It is the duty of the court to make inquiry and determine the need of the defendant.

In this case Mr. Heasley proceeded to trial only at the behest of the trial judge who refused to appoint counsel for the defendant at the expense of the public, and directed the trial to commence.

■ When the entire proceedings are viewed in the light of the events that preceded the trial of the defendant on the charge against him of criminal contempt, we are satisfied that the defendant's appearance on his own behalf as his own counsel was involuntary and that he was not afforded the right of counsel, for which our Constitution and statutes provide, nor did he intelligently and understandingly waive his rights.

The judgment of conviction is reversed, the bail bond forfeiture set aside, and the case remanded for further proceedings according to law.

TEIGEN, C. J., and ERICKSTAD, PAULSON, and STRUTZ, JJ., concur.