**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Herbert O. JENSEN, Defendant and Appellant.**

**Crim. No. 554.**

Supreme Court of North Dakota.

April 22, 1976.

Clifford C. Grosz, State's Atty., Fessenden, and Calvin N. Rolfson, Deputy Atty. Gen., Bismarck, argued, for plaintiff and appellee State of North Dakota; argued by Calvin N. Rolfson.

Leo Broden, Devils Lake, for defendant and appellant.

VOGEL, Justice.

Herbert O. Jensen has appealed to this court from his conviction of two counts of murder in the second degree. We will hear that appeal on the merits when the transcript and record on appeal are filed.

In the meantime, he has filed two motions in the court. One, based on Rule 9(b) of the North Dakota Rules of Appellate Procedure, seeks his release on bail while the appeal is pending. A similar motion was denied by the district court.

The second motion, based on Rules 5(b)(1)(v) and 44 of the North Dakota Rules of Criminal Procedure and Section 29–07–

01.1, North Dakota Century Code, asks that we find him indigent and order payment by the county of his attorney fees and expenses of appeal.

We deny both motions. Since one of the motions calls for interpretation of rules which we have not previously interpreted, we will state our reasons more fully than we otherwise might.

## MOTION FOR RELEASE PENDING APPEAL

In *State v. Stevens,* 234 N.W.2d 623, 626 (N.D.1975), we approved the rule

" . . . that a convicted defendant is entitled to release while the appeal is pending only if it appears (1) that the appeal is not frivolous, (2) the appeal is not taken for the purpose of delay, (3) there is sufficient reason to believe that the conditions of release will reasonably assure that the defendant will not flee, and (4) there is sufficient reason to believe that the defendant does not pose a danger to any other person or to the community."

Jensen was originally charged with two counts of first-degree murder. During the course of the trial the trial court, over the objection of the State, reduced the charges from first-degree to second-degree murder. The jury found him guilty of two counts of second-degree murder.

On February 19, 1976, he was sentenced to twenty years in prison on each count, with an additional ten years, pursuant to Section 62–01–02, N.D.C.C., because the murders were committed while armed. The sentences are concurrent.

On the day of sentencing Jensen moved for release from custody pending appeal. A hearing was held, and the court ruled against release. The court's oral statement of reasons for denying the motion included statements that a defense of insanity had been interposed, that a psychiatric examination had been made and a report furnished, and that the court believed that no substantial error had been committed at the trial. Within a week thereafter the court

complied with the requirements of Section 12.1–32–09, subsection 4, N.D.C.C., requiring a written statement of its reasons for imposing an extended sentence. The court mentioned the jury verdict finding the defendant guilty of two murders with a firearm; that the defendant had previously resorted to violence, indicating that he has an unstable temperament and is sometimes given to resorting to overt violence; that he has no one dependent upon him or subjected to hardship by reason of his incarceration; and that he is a dangerous special offender.

Jensen appealed promptly and the appeal is moving expeditiously. He raises serious questions of substance on his appeal, some of them arising out of the fact that the crime was committed prior to the effective date of the complete revision of our substantive criminal law adopted by the 1973 Legislative Assembly and effective July 1, 1975, now codified in Title 12.1, N.D.C.C., while the trial and sentence occurred later. Uncertainties arose as to the applicability of the old and the new law.

We have no hesitation in finding that the appeal is not frivolous and was not taken for purposes of delay.

On the question of whether Jensen can be released on conditions which will reasonably assure that he will not flee, Jensen points to his compliance with prior orders of the court while he was on bail pending the trial, his ownership of real estate in this State, and his good record in the armed forces for more than twenty years. We must recognize, of course, that the temptation to flee after a conviction is greater than the temptation prior to trial, when there may be more hope of acquittal. However, just as the trial court seemed to accept the argument that Jensen would not flee if released on bail, we will likewise accept it.

There remains the question of whether the defendant poses a danger to other persons and the community, if released on bail.

We have mentioned his plea of insanity, the nature of the crime, and previous resort to violence. The latter finding of the trial

court arose from an episode in which Jensen became angry at another motorist, pursued his vehicle onto private property and repeatedly rammed it with his own vehicle, and offered violence to the other driver. While Jensen minimizes this episode by referring to the fifty-dollar fine imposed on him after conviction of assault and battery as a result of this incident, we agree with the trial court that the episode is indicative of an unstable temperament and a proclivity for violent methods of resolving disputes, and that it justifies, along with the other facts, a finding that releasing the defendant pending the appeal would pose a danger to other persons and the community.

We also take into account the fact that the trial judge had the opportunity, during a trial lasting almost two weeks, to observe the defendant and form an opinion as to his conduct.

We also note that the two victims of the murders were Indians, whom the defendant had picked up while they were hitchhiking, and that the defendant admits to being a "racist" so far as Indians are concerned.

We have no hesitancy in denying the motion for release pending appeal. We hold that there is not sufficient reason to believe that Jensen does not pose a danger to others and the community.

## INDIGENCY AND REPRESENTATION AT PUBLIC EXPENSE

■ If a defendant is indigent, he is entitled to have an attorney appointed for him at public expense in the Supreme Court, as well as in other courts. Section 13 of the Constitution of North Dakota provides, in part:

"In criminal prosecutions in any court whatever, the party accused shall have the right . . . to appear and defend in person and with counsel. . . ."

Rule 44, North Dakota Rules of Criminal Procedure, provides:

"Absent a knowing and intelligent waiver, every indigent defendant shall be entitled to have counsel appointed at public expense to represent him at every stage of the proceedings from his initial appearance before a magistrate through appeal in all felony cases. Absent a knowing and intelligent waiver, every indigent defendant shall be entitled to have counsel appointed at public expense to represent him at every stage of the proceedings from his initial appearance before a magistrate through appeal in all nonfelony cases unless the magistrate has determined that sentence upon conviction will not include imprisonment. The court shall appoint counsel to represent a defendant at his expense if he is unable to secure the assistance of counsel and is not indigent."

The question before us is whether Jensen is "indigent" within the meaning of Rule 44.

For decisions in which we construed our pertinent statutes, prior to the adoption of the Rules of Criminal Procedure, see *State v. Heasley,* 180 N.W.2d 242 (N.D.1970), and *State v. Whiteman,* 67 N.W.2d 599 (N.D. 1954). For one view of standards for determination of eligibility for compensation of counsel from public funds, see ABA Standards Relating to Providing Defense Services, Part VI.

■ Once indigency is suggested, it is the duty of the court to " . . . go forward to determine whether or not the defendant is indigent . . . " *State v. Heasley, supra,* at 249.

■■ One can be indigent even though he is not a pauper. *Anaya v. Baker,* 427 F.2d 73 (10th Cir. 1970); *Application of Trevithick,* 260 F.Supp. 852 (D.S.D.1966). In the context of the criminal law, the term "indigent" has a meaning different from the standards used in determining eligibility for welfare services. See ABA Standards Relating to Providing Defense Services, Commentary to § 6.1.

■ For standards to be followed hereafter in determination of eligibility for payment by the public for defense services, see Appendix to this opinion.

Jensen's showing to support his claim of indigency consists of an affidavit of finan-

cial resources, a statement of the amounts due his attorney for services in the district court, a letter from the court reporter demanding $200 as a down-payment on fees for transcribing the testimony at the trial, and documentation furnished at our request after oral argument, consisting of a further affidavit, a list of monthly bills for April 1976, a copy of 1975 individual tax returns, and copies of deeds and option agreements relating to rental property owned by Jensen.

Whether inadvertently or by intention, Jensen has given us no balance sheet and no list of assets other than the rental property.

From these documents we draw some conclusions:

1. Jensen has a monthly income of $1,065 from the Veterans Administration, Social Security, and National Service Life Insurance, all of which is nontaxable.

2. He was the owner of three rental properties, two purchased in 1970 for $11,574 and $6,350, on which he owes $8,665.16 and $4,196, and one purchased in 1973 for $13,000 on which he owes $12,907.20. We assume that the value of these properties has increased, but we are given no current appraisal.

3. In order to raise money for cash bail bond of $10,000, Jensen conveyed these properties to acquaintances, who gave him in return options to repurchase the properties for the amount loaned plus 8½ percent interest. When bail was reduced to $5,000, the $5,000 received from the clerk of court was divided among Jensen and his lenders on the basis of the amount they had contributed toward the $10,000 cash bail. He has not exercised the options yet, but it is obvious that he has some substantial equity in the property.

4. As of March 24, 1976, Jensen expected to pay in April $722.86 in monthly payments on various accounts and installment debts totaling $19,407.11. Included in the monthly payments is a $100 payment on his attorney fees. The debts include $4,151.30 owed to the attorney who represented him at the trial.

█ Based on these facts, we are unable to find Mr. Jensen to be indigent. We cannot hold that one who has a tax-free income of $1,065 per month, no dependents, and a moderate equity in three rental properties, and who is paying $100 per month on his attorney fees, is "indigent" within the meaning of Rule 44 and our prior holdings.[1] In the absence of a statement of assets, we can give little consideration to a statement of liabilities.

Both motions are denied.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

## APPENDIX

As guidelines for the determination of eligibility for payment out of public funds for representation in criminal cases, we adopt the following standards, adapted from Chapter II of the Guidelines of the Administrative Office of the United States Courts, referring to eligibility for appointment of counsel under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A, as amended. We have considered, but not directly used, the Recommendations of the National Legal Aid and Defender Association in National Study Commission on Defense Services "Draft Report and Guidelines for the Defense of Eligible Persons," Volume I, at page 155.

1. *Factfinding*

The determination whether a person is eligible for the appointment of counsel to represent him is a judicial function to be performed by a judge or magistrate. Other officers of the court may be designated to obtain the facts upon which such determination is to be made. Whenever practicable, factfinding should be done prior to the person's first appearance in court. Any information bearing on the de-

---

1. While precedents are less useful in determining indigency than in many other areas, we note that a defendant whose income was $1,200 per month was held not entitled to appointment of counsel in *People v. Losacano,* 29 Ill.App.3d 103, 329 N.E.2d 835 (1975).

fendant's financial status should be furnished by him.

2. *Standards for Eligibility*

A person is "indigent" within the meaning of Rule 44, N.D.R.Crim.P., if his net financial resources and income are insufficient to enable him to obtain qualified counsel. In determining whether such insufficiency exists, consideration should be given to (a) the cost of providing the person and his dependents with the necessities of life, and (b) the cost of a defendant's bail bond if financial conditions are imposed, or the amount of the cash deposit defendant is required to make to secure his release on bond. Any doubts as to a person's eligibility should be resolved in his favor; erroneous determinations of eligibility may be corrected at a later time. At the time of determining eligibility, the judge or other officer should inform the person of the penalties for making false statements, and of his obligation to inform the court and his attorney of any change in his financial status.

3. *Partial Eligibility*

If a person's net financial resources and income anticipated prior to trial and within a reasonable time thereafter are in excess of the amount needed to provide him and his dependents with the necessities of life and to provide the defendant's release on bond, but are insufficient to pay fully for retained counsel, the judicial officer should find the person eligible for the appointment of counsel under the Act and should direct him to pay the available excess funds to the clerk of the court at the time of such appointment or from time to time thereafter. Any funds so deposited shall be disbursed by the clerk by order of the court. The judge or magistrate may impose such other conditions from time to time as may be appropriate.

4. *Family Resources*

The initial determination of eligibility should be made without regard to the financial ability of the person's family unless his family indicates willingness and financial ability to retain counsel promptly. At or following the appointment of counsel, the judicial officer may inquire into the financial situation of the person's spouse (or parents, if he is a juvenile) and if such spouse or parents indicate their willingness to pay all or part of the costs of counsel, or if there is a statutory duty to support the defendant, the judicial officer may direct deposit or reimbursement.