**STATE of North Dakota, Respondent,**

v.

**Herbert O. JENSEN, Petitioner.**

**Cr. No. 554–B.**

Supreme Court of North Dakota.

April 20, 1978.

Calvin N. Rolfson, Deputy Atty. Gen., State of North Dakota, State Capitol, Bismarck, for respondent.

Irvin B. Nodland, Bismarck, for petitioner; argued by Herbert O. Jensen, pro se.

ERICKSTAD, Chief Justice.

This is the third time we have considered matters involving Herbert O. Jensen. In the first case, after Jensen was convicted of two counts of murder in the second degree, prior to a hearing on the merits of his appeal we heard a motion in this court which asked us to find him indigent and order payment by the county of his attorneys' fees and expenses of appeal. That motion was denied in *State v. Jensen*, 241 N.W.2d 557 (N.D.1976). Thereafter, we heard his appeal on the merits and granted him a new trial. *See State v. Jensen*, 251 N.W.2d 182 (N.D.1977). In the new trial, Jensen was again found guilty of two counts of murder in the second degree, and sentenced on each count to 30 years in the State Penitentiary less credit for 61 days served in the Law Enforcement Center at Devils Lake and at the State Hospital. The sentences run concurrently.

As of the 8th day of December, 1977, Jensen appealed from both verdicts and both judgments. The appeal on the merits is not before us at this time. What is before us is a petition asking us to declare Jensen indigent, appoint counsel to represent him for all appeal purposes, and order a complete transcript of all proceedings held in conjunction with the retrial, all to be paid for by the county. A motion quite similar to this petition was filed with the district court, heard by the court and denied. On setting the petition for hearing in our court, we requested that the record in the district court be transmitted to our court, authorized additional evidence to be submitted in our court through the means of affidavits, and directed the county to secure the transcript of the indigency hearing for filing with this court. Affidavits were filed by both the State and Jensen at the hearing in our court. The State was represented by Mr. Calvin Rolfson, the First Assistant Attorney General in the criminal division, and Mr. Jensen appeared and spoke in his own behalf. Present also at Jensen's request was attorney Irvin B. Nodland who spoke briefly in explanation for his unwillingness to advance funds for the transcript or for his services and other costs in conjunction with the appeal in light

of Jensen's present indebtedness to him in the sum of approximately $2,500 for previous legal services.

In the hearing before the district court on the motion, and in our court on the petition, the issue has been one of indigency. In determining that issue, Jensen's assets, liabilities, and income have been analyzed. In conjunction therewith, the State implies that Jensen has conveyed certain property to a friend and others for less than full value in light of the inflation which has taken place. From the State's view, Jensen has conveyed away his property to create the appearance of indigency, whereas from Jensen's view he has conveyed away his property to secure funds to pay attorneys' fees and costs in the original trial, the appeal, and the new trial.

Peculiarly, Jensen has not alleged that he has a meritorious claim on appeal, nor has the State contended that his appeal is frivolous. We will not assume the appeal to be frivolous, but rather will apply the caution urged by Ronald P. Sokol in his book, Federal Habeas Corpus, Section 26 at pp. 195–196 (2d ed. 1969).

"The utmost caution should naturally be exercised in dismissing a case as frivolous. If the least bit of doubt exists, it must be resolved in the petitioner's favor.
. . .
"In this regard the test employed by the Ninth Circuit is a good one:
It is frivolous only if the applicant can make no rational argument on the law or facts in support of his claim for relief.
It may well be that there are arguments that can be made on behalf of the petitioner that are well beyond the law's existing frontier but well within the frontier of rationality. Only when the frontier of the latter is passed does the case become frivolous."

In proceedings in forma pauperis under federal law, one must state in his affidavit that he is unable to pay costs or give security therefor, and, in addition thereto, state the nature of the defense or appeal and affiant's belief that he is entitled to redress.[1] The court may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.[2] Rule 44 of the Federal Rules of Criminal Procedure and Title 18, U.S.C.A., Section 3006A, subsection (b) relate to appointment of counsel in criminal cases under the federal law when a defendant is charged with a felony or misdemeanor, other than a petty offense.[3]

1. "§ 1915. *Proceedings in forma pauperis*

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

"(b) In any civil or criminal case the court may, upon the filing of a like affidavit, direct that the expense of printing the record on appeal, if such printing is required by the appellate court, be paid by the United States, and the same shall be paid when authorized by the Director of the Administrative Office of the United States Courts." 28 U.S.C.A. § 1915(a, b).

2. "(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C.A. § 1915(d).

3. "*Rule 44. Right to and Assignment of Counsel*

"(a) *Right to Assigned Counsel.* Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the federal magistrate or the court through appeal, unless he waives such appointment.

"(b) *Assignment Procedure.* The procedures for implementing the right set out in subdivision (a) shall be those provided by law and by local rules of court established pursuant thereto. As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 24, 1972, eff. Oct. 1, 1972." 18 U.S.C.A., Federal Rules of Criminal Procedure, Rule 44.

"(b) *Appointment of counsel.*—In every criminal case in which the defendant is charged with a felony or a misdemeanor, other than a

In a rather recent decision rising out of this State in the federal court, the United States Court of Appeals for the Eighth Circuit said that the procedure to be followed where a complaint is filed in federal court along with a motion for leave to proceed in forma pauperis is directed to the sound discretion of the trial court. *Forester v. California Adult Authority*, 510 F.2d 58, 60 (8th Cir. 1975). In that case, an inmate at the North Dakota State Penitentiary brought a civil rights action in federal court against the California Adult Authority. In sustaining the district court's dismissal of the complaint, the court of appeals said that its review was limited to determining whether the district court's conduct in dismissing the action constituted an abuse of judicial discretion.

■ Although we may not have previously stated such a view, we think that henceforth our review should be similarly limited to determining whether the district court, in denying a petition for appointment of counsel and for the cost of securing transcripts and other costs on appeal, abused its judicial discretion.

In Jensen's previous motion in our court for the payment of his attorneys' fees and expenses of appeal by the county in conjunction with his first convictions and appeal to this court, we recognized as a basis for his motion, Section 13 of the Constitution of North Dakota, and Rule 44 of the North Dakota Rules of Criminal Procedure.[4]

In that case, we adopted from Chapter 2 of the Guidelines of the Administrative Office of the United States Courts, standards to be followed in the future to determine eligibility for the payment of attorneys' fees and costs out of public funds. *State v.*

*Jensen*, 241 N.W.2d 557, 561 (N.D.1976). We said that the question before us was whether Jensen was "indigent" within the meaning of Rule 44. We think that is generally the only issue in cases such as this. However, it is interesting to note that the United States Court of Appeals for the Seventh Circuit has held that under Rule 44 of the Federal Rules of Criminal Procedure and the Criminal Justice Act of 1964 (18 U.S.C. § 3006A(b, c)), that the test is not indigency but is rather whether the defendant is "financially unable" to obtain counsel. *United States v. Kelly*, 467 F.2d 262, 266 (7th Cir. 1972), *cert. denied*, 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed.2d 393 (1973).

In that case, Kelly, an attorney, was charged with using the mails to defraud. He contended that he was unable to obtain counsel to represent him in his defense, notwithstanding he owned 10,000 shares of stock in a California corporation that he could not liquidate because of SEC rules. The circuit court found no abuse of discretion in the trial court's refusal to appoint counsel at State expense, not because of the shares of stock which he had difficulty liquidating, but because of Kelly's lateness in seeking assigned counsel, his vagueness about his ability to retain counsel, and because he was sufficiently capable and alert to conduct his defense pro se.

It should be noted here that our Rule 44 differs from the federal rule in that our rule speaks of "every indigent defendant", whereas Rule 44 of the Federal Rules of Criminal Procedure speaks of every defendant who "is unable to obtain counsel". It may be that because of the peculiarities of this case that we may have to look beyond

---

petty offense, and appears without counsel, the United States magistrate or the court shall advise the defendant that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the defendant waives the appointment of counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him. . . . " 18 U.S.C.A. § 3006A(b).

4. "In criminal prosecutions in any court whatever, the party accused shall have the right . . . to appear and defend in person and with counsel. . . . " N.D.Const. § 13.

"Absent a knowing and intelligent waiver, every indigent defendant shall be entitled to have counsel appointed at public expense to represent him at every stage of the proceedings from his initial appearance before a magistrate through appeal in all felony cases. . . . " Rule 44, N.D.R.Crim.P.

the issue of indigency to the petitioner's ability to obtain counsel in order to afford him his equal protection and due process rights under the Fourteenth Amendment to the United States Constitution and Section 13 of the North Dakota Constitution.[5] *See* for principle involved, irrespective of disposition of the case: *Colunga v. State,* 527 S.W.2d 285 (Tex.Cr.App.1975); *Cunningham v. State,* 484 S.W.2d 906 (Tex.Cr.App. 1972); *State ex rel. Mastrian v. Tahash,* 277 Minn. 309, 152 N.W.2d 786 (1967).

Let us examine the peculiarities of this case which may justify the assignment of counsel and the payment of the cost of the transcript at public expense, notwithstanding the petitioner may not be indigent.

Accepting at face value for purposes of discussion the affidavit which Jensen filed with our court on April 4, 1978,[6] we note that he asserts that his total assets are $1,275.43, that the total amount of his monthly income is $920, and that he has an outstanding indebtedness of $16,493.41. In determining his assets, Jensen has included an unimproved quarter section of land described as "that certain parcel of land registered under The Land Titles Act as Parcel 6922 in the Register for District of Fort William Freehold situate in the Township of Pardee in the District of Thunder Bay and Province of Ontario, namely: The south east quarter of Section Thirteen (13) in the First (1) Concession of the said Township of Pardee, containing by admeasurement One hundred and Sixty (160) acres, be the same more or less", which he estimates to be of the value of $1,120, the purchase price of the property. Among the debts he has included a loan from the Veterans Administration of $4,505.23, a loan from the Prudential Insurance Company of Minneapolis, Minnesota, of $2,764.34, and a loan from the Bank of North Dakota of $3,205.58.

The State contends that the unimproved property in Ontario, Canada, is of a minimum value of $6,400 and a maximum of $14,400. Notwithstanding that assertion, Jensen's counsel asserts that that property is extremely shaky security and it appears that neither he nor the court reporter would accept it as security for the payment of their services.

If we subtract from the total of Jensen's outstanding indebtedness the amounts of money which he owes the Veterans Administration and his insurance company because they are not truly debts, but loans upon insurance policies and thus need not be paid, we arrive at a balance of indebtedness of $9,223.84.

The cost of a transcript of the trial may be from $2,000 to $3,000 and although no estimate has been made of the cost of the services of a lawyer in conjunction with the appeal to this court, Jensen asserted in his brief in support of his motion before the trial court that the cost of attorneys' fees

---

5. "*Section 1.* All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S.Const., Amend. XIV.

"*Section 13.* In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal

case to be a witness against himself, nor be deprived of life, liberty or property without due process of law." N.D.Const. Section 13.

*See also:* National Advisory Commission on Criminal Justice Standards and Goals, Courts, Standard 6.4, p. 126 (1973).

"*In a reviewing court functioning under flexible procedures with a professional staff, a criminal case should be ready for initial action within 30 days after the imposition of sentence. Cases containing only insubstantial issues should be finally disposed of within 60 days of imposition of sentence. Cases presenting substantial issues should be finally disposed of within 90 days after imposition of sentence.*"

6. Apparently the affidavit of April 4, 1978, contains more current and hopefully more accurate information than was contained in the affidavit dated December 19, 1977.

696 ■ 

and other costs in conjunction with his first trial totaled $4,551.30, that attorneys' fees in effecting his first appeal to this court were $6,216.33 and the cost of a transcript of $1,054.63, and that his legal expenses and costs in conjunction with the second trial were $12,256.76.

In the most recent proceeding before the trial court on his motion, Jensen testified that he used the proceeds of the sale of the two pieces of real estate in Minot, North Dakota, for the payment of attorneys' fees and costs. Notwithstanding that fact he still owes, according to the affidavit which he filed with this court on April 4, 1978, attorney Leo Broden of Devils Lake, $2,220, and attorney Irvin B. Nodland of Bismarck, $2,030.57.

As previously indicated, the State infers that Jensen has conveyed his property in Minot for less than its market value and that may be so, but on the basis of the evidence submitted, we are not able to so conclude. In any case, in light of the disposition which we have in mind, we think that the truth or falseness of that inference is immaterial.

Jensen infers that he is unable to secure anything comparable to the figures which the State ascribes as the value of his Ontario property, but seemed to be willing by his expression in our court to make that property available as security.

He asserts that he is obligated to apply all of the income which he receives monthly toward the payment of his existing debts except for the amount of $100 per month which he deems necessary for his personal expenses while incarcerated in the State Penitentiary.

■ Assuming Jensen's outstanding indebtedness to be $9,223.84, not including $7,269.57 which is the total of his indebtedness to the Veterans Administration and to his insurance company, we think it would be fair both to him and to his creditors if he were to allocate half of his monthly income to the payment of those debts and his personal expenses. He would then have the other half of his monthly income available for use in conjunction with the employment of counsel and the payment of costs of the transcript in conjunction with his appeal.

As such an arrangement would necessitate the passage of a number of months before funds would be accumulated in a sufficient amount to pay for the costs of the transcript and counsel's fees on appeal, and because Jensen, although he is not completely without income or property, is entitled to prosecute his appeal as promptly as one who is clearly indigent, we find it necessary to dispose of the petition herein in a manner contrary to the disposition of a similar motion in the district court.

Because Jensen is presently unable to secure counsel and to pay for the cost of his transcript on appeal, and as time is of the essence to avoid possible equal protection and due process problems,[7] we believe it necessary to order that the cost of the transcript on appeal and the cost of counsel in conjunction with appeal be initially paid by the County of Wells. Accordingly, it is our view that the county is obligated to do this, providing Jensen first assigns one-half of his anticipated monthly income to the County of Wells to apply on any indebtedness which the county may incur in conjunction with providing the transcript of the trial and the services of counsel in his appeal, and providing further that Jensen mortgages his Ontario property to the County of Wells as further security for the payment of the costs of the transcript and legal services on appeal.

Our decision today is consistent with the goal of the Standards Relating to Appellate Courts, American Bar Association Commission on Standards of Judicial Administration (1977), especially Section 3.52, Standards of Timely Disposition.

As the attorneys' fees, if Jensen complies with the above, will now be advanced by the county, the guidelines and principles

---

7. *See Colunga v. State, supra; Cunningham v. State, supra; State ex rel. Mastrian v. Tahash, supra.*

enunciated in *Baer v. O'Keefe*, 235 N.W.2d 885 (N.D.1975) limiting attorneys' fees and other expenses will apply. *See* Modification of Guidelines recommended by the North Dakota Judicial Council at its meeting of January 21 and 22, 1978.

We accordingly grant the petition conditionally, and remand this case to the district court for disposition consistent with this opinion.

VOGEL, SAND and PAULSON, JJ., concur.

PEDERSON, Justice, dissenting.

The majority opinion appears to say that "abuse of discretion" is the standard which we apply in reviewing a trial court denial of a petition for appointed counsel and costs under Rule 44, NDRCrimP. It further appears to say that, in this case, the trial court did not abuse its discretion. Although I agree with both of those premises, they lead me to a conclusion opposite to that reached by the majority.

I do not think that Rule 44 of the Federal Rules of Criminal Procedure redefines rights under the Fourteenth Amendment to the United States Constitution, nor under Section 13 of the North Dakota Constitution. Certainly it does not amend Rule 44, NDRCrimP.

The majority opinion requires Wells County to become a lending agency and invest in lands far beyond its borders, far beyond the borders of North Dakota, and far beyond the borders of the United States. Although there may be exceptions which authorize ownership of land by a governmental entity outside its borders (such as for garbage disposal), there is no exception broad enough to cover this case.

The precedent established by the majority opinion will effectively require every county to finance the defense of every criminal case. I don't think we are quite ready for that.